We will now turn to the next piece of the calendar, Talarico Bros. Building Corp. v. Union Carbide Corporation, 21-1354CV. And I understand we have Attorney Horn for the appellant who would like to reserve two minutes for rebuttal. And again, please take a second to adjust the microphones if you need. Please proceed. Good morning, Your Honors. May it please the Court, John Horn, Harder C. Creston Emory on behalf of the plaintiff's appellants in this matter. The District Court committed reversible error when it granted defendants' pre-answer motion to dismiss on its wholly invented categorical basis that disposal of material recycled as asphalt base is not discarded of solid waste under the Resource Conservation and Recovery Act. No court has ever made such a determination on a 12b6 motion, and that is because, as even defendants concede, the discarding question turns on the specific facts or allegations regarding the materials at issue. The lower court's dismissal must be vacated because plaintiffs amply pled that the defendants generated radioactive solid waste, that the defendants contributed to the transport of that radioactive solid waste to plaintiff's property, and that the endangerment to human health or the environment. Plaintiffs pled the elements and then pled very specific allegations to support those central tenets of a RCRA claim. The District Court's error is not only on the categorical basis that I described at the outset, but can be seen at page 26 of its decision and page 460 of the record. Thus, the court wrote, RCRA solid waste needs to be discarded for that statute to apply. No problem there. And the recycling of material, even outside of the material generators industry, is not discarding that material. The court determined that as a matter of law on a pre-answer motion to dismiss. Not only is that fundamentally at odds with the language of the statute and with the determinations of every court that has weighed in on that question, but it's also an incredibly fact-intensive determination. Because what RCRA is about is regulating waste. And whether something has become part of the, quote, waste disposal problem is the threshold factual question which cannot be determined on a pre-answer motion to dismiss. We know that the EPA has determined quite clearly that recycled waste may, or recycled material, secondary material, may in fact be discarded material. We also know that- Isn't the question not whether it's part of the waste disposal problem, but whether it fits within the four corners of the definition of solid waste in 261.2? I mean, doesn't, aren't we sort of, isn't that analysis really got to be grounded in the regulation? Yes, Judge. But working backwards to the definition, right? We know that solid waste must be discarded. Judge said it. You got that right. So it must be discarded. Once it becomes discarded, and whether in fact discarding has taken place, is inextricably linked to the question of the waste disposal problem. It is rather than inextricably linked to 2I, A, B, C, and D, as to whether it's abandoned, recycled, as explained in paragraph C, or considered inherently waste-like? Like, aren't those the, isn't that the test? For hazardous waste, and specifically for hazardous waste as a subset of solid waste, yes, Judge. And so the question then becomes, with respect to this material, right, was it abandoned? Was it discarded? Yes, sir. Where in the complaint do you allege that it was discarded or abandoned? Judge, we use the term disposed of. Yeah, which is sort of, you dispose of something, but it's sort of, if you had alleged, for example, they discarded it. Let's say dispose of is synonymous with discarded. You can't just track the language of a statute, right? You have to give us factual allegations. Like, what did they do to discard it, right? And you can't just say, well, they discarded it. So where did you give us factual allegations saying that they were, in fact, discarded other than just saying that they did it? At paragraph three, Judge, at the outset, at page A66 of the record, we say that the defendants directly and indirectly disposed of their waste, their waste which is an industrial byproduct, right? No, no, I get it. But that's sort of like a topical heading, right? Sure. I mean, when you track the language of the statute, you would say, okay, they discarded the waste. And you say, great, now we know what's to come. Now let's see the factual allegations backing that up. So, Judge. And I just see later on, it seems like you're still just maybe not tracking the statutory language because you're using, as I understand, dispose of instead of discarded. But I don't see anything that is particularly specific. So Judge, let me point you to paragraphs 50 and 51 of the complaint. And those may be found at 875 of the record. They're speaking specifically about union carbide. We say that they're slag. And slag is waste. Slag is the waste that is generated after you're done extracting the metals from the floor. Okay, so 50 says the union carbide generated. That's right. So I'm looking for where they, how do we know what they discarded? You say they're present in 51. We do know. But it doesn't tell us that it's discarded. I mean, they could keep it in barrels hoping to sell it someday. I don't know. The point is, where's the factual detail where you flesh out the discarded? Judge, your example of the barrel is a very important one. Why? Because the potential for recycling does not make something not discarded. Once it is... Well, if I keep something in my garage, I haven't discarded it yet, right? That's why people have garage sales, right? You guys still got it. I haven't discarded it. That's the problem. That's why my garage is full. So that's what I'm saying. The fact that this stuff is present as property doesn't tell us it's been discarded. Where are the additional factual allegations that get us that one level deeper? Well, Judge, you can look at the profile page of the EPA's... I'm talking about your complaint. Well, I understand, Judge, but the materials that were relied on in drafting the complaint are, among others, the EPA profile page, the EPA action memo, the... Which are incorporated by reference in your complaint? They are, Judge. Okay. And importantly, too, also incorporated by reference are materials that were prepared back in 1978 by Occidental Corporation, where it says, and I'll point the point... Just point, again, it helps us, what pages of the complaint are you referring to that would be helpful? So pages 52, excuse me, paragraphs 52 and 53 talk about the fact that Occidental's waste, it's the slag that is generated from the process of extracting metals and other elements from ore. So the thing that is created as the industrial byproduct by Occidental is found on properties throughout Niagara Falls. I get that. I'm asking specifically, you say that there are documents that are cross-referenced and thereby incorporated by reference into the complaint. I'm asking for those cross-references. Specifically, Judge, the Oak Ridge report is referenced several times in the complaint. We also refer... Yeah, where? No, that's not... I'm sorry. I'm just looking at the pages. At A141 of the record. No, no. Where's the... Just for now, let's just look at the paragraphs of the complaint, and then we can look at the cross-referenced documents. So where is the point in the complaint where you cross-referenced that? A72. A72. Paragraphs 38 through 40, Judge. 38. Okay. So there you say one of the reports, this is the 1986, the Oak Ridge report. Got it. Okay. And Judge... Well, Judge, I would fall back to the general proposition that this court has before it documents not only incorporated by reference, but also relied on by the plaintiffs as they were drafting this complaint. And they comprise significant parts of the record in this case. Also, the materials actually presented by the defendants as part of the motion to dismiss. Well, those don't go into a 12B6 analysis. Do they? Well, in your view, do they? They do not go into a 12B6 analysis, Judge, but the Oak Ridge report is in the record by dint of the defendants having submitted it. Regardless, it is referenced in our complaint as an important document. That I understand. And what it says, Judge, critically, is that in Niagara County, there are 62 properties. There were 100, but 38 got taken care of by virtue of the federal program in place at the time. 62 properties at which elevated gamma radiation anomalies are associated with asphalt driveways and parking lots, bedding under asphalt surfaces, and in general gravel applications. And then we go through in the complaint and talk about the specific properties that are called out in the Oak Ridge report that correlate to some of the plaintiff properties in this case. And this is, just so I'm looking at the correct report, this is the one that begins in A132? The Oak Ridge report, I think, Judge, begins at... I just want to make sure I'm looking at the right thing. You are correct, Judge. A132. The meat of it starts at A144. Thank you. I see, Judge, that I am well over... Why don't you take 15 seconds to wrap up. We will hear you on rebuttal. Okay. I think it's also important, Judge, to get back to the court's fundamental error, which is to say that it was permissible to determine on a pre-answer motion to dismiss that secondary materials, just because they are used in a different industry, are necessarily recycled and therefore beyond the cradle-to-grave protections of RCRA. That is a misstatement of the law. We will hear you on rebuttal. Thank you very much. Let's hear for counsel for the appellee, Attorney Bush. Yes, Your Honor. Please. May it please the court, Matthew Bush from King & Spaulding, representing Union Carbide, presenting on behalf of all appellees. And I'd like to focus on the discard issue that the court's been focused on, because all the traditional tools of statutory interpretation point in favor of reading the statute such that the plaintiffs have not sufficiently alleged in the complaint a discard. The statutory language and canons of construction point in that direction, the legislative history and statutory purpose point in that direction, and the case law points in that direction. And, of course, statutory interpretation begins with the text of the statute. And the plain meaning of discarded is something that's thrown away, abandoned, with no further use. And under the canons of construction, when trying to interpret a general phrase like other discarded material, we look to the words around it. Here, the words around discarded are garbage, refuse, sludge. It's material like garbage that's been thrown away with no further use. So is it your position that as a matter of law, if material is repurposed, it, by definition, isn't discarded? Your Honor, we think given the allegations in the complaint and the way this case was presented to the district court with representing that the material is discarded, that as a matter of law, they've pled material that's not discarded. But at a minimum, if you disagree with that, they have not presented sufficient allegations in the complaint to show a discard. Doesn't the definition of discarded, in part, relate back to the definition of disposal, which includes placing it on the land such that the solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into waters, including groundwaters? Wouldn't this squarely fit that? No, Your Honor, because what I think you're referring to is section 261.1 of the regulations or something in the 261 series. And those regulations, they're a little confusing. And if you look at this court's decision in Connecticut Coastal, it discusses the relationship between the regulations and the statute and why it's confusing. But those regulations only apply to something that's, quote, hazardous waste, which is a specific term of art in the regulations. And the plaintiffs admit in their reply brief at page 4 that the regulations do not apply here because the material does not fall under the regulatory definition. That's super helpful. Thank you for that. Does that mean that the definition of discarded material is different for hazardous waste? It means something different than it does in the context of solid waste? Yes, I think that's right, Your Honor. And if you look at this court's decision in Simsbury-Avon, they reach a ruling on whether the material is solid waste under the regulations. But they say we're not going to reach a ruling about whether the material is solid waste under the statutory definition because they reached an alternative holding. So it's clear from that decision that the court viewed the solid waste definition of the regulations differently necessarily from the solid waste definition under the statute. But doesn't that still raise the question of whether there's a factual issue? If you dig a big hole and dump your stuff in it and we don't have a regulation that says this automatically constitutes discarding, isn't that something that a jury might say, well, what did you do with it? Well, I dug a big hole and then I paved over it. I mean, that, I think, could be a jury question, no? If they allege that what the defendants did here was dug a big hole and dumped stuff in it, that would get them at least a little closer to the line. But they haven't even alleged that. The complaint is completely absent of any factual allegations sufficient to show a discard. Well, you described the complaint as alleging that they used it as underbedding for roadways. That's right, Your Honor. On paragraph three of the complaint, they allege that the material was used as aggregate fill and substitute. And is your saying that that allegation covered all of the material or some of the material? As you read the specific words of that allegation in paragraph three, say that it applies to at many sites. And so I understand that there's a way to read that allegation as maybe doesn't apply to all the sites. I'd say two things to that. One is if that's the right reading, as to the sites it doesn't apply to, some unknown number, we don't know which ones, they have even fewer allegations of how this material was used. So they're even worse off on a Twombly-Iqbal standpoint from that perspective. What is the allegation as to what and where your client, Union Carbide, disposed of solid waste? The allegations, Your Honor, are that it was transported from the defendants to the plaintiff's property. I'm sorry, Your Honor, I'm getting this feedback. To all the plaintiff's property? It doesn't really distinguish between, for the most part, it doesn't distinguish between tying a particular defendant to a particular plaintiff's property. But what the complaint alleges is that the material was transported from the defendants, and I can give you some sites for this, from the defendants to the plaintiff's properties either directly or through a third party. When? It doesn't, I guess, Your Honor, I don't think it says when other than this generally started in the 1940s and continued through the 60s. I don't think the complaint has a specific allegation as to the timing of when any of this happened, other than those general timeframes that it started in the 40s. Well, we do have the one allegation, I guess, that some of Union Carbide's solid waste are present at the Niagara Falls Boulevard properties and the Holy Trinity Cemetery, right? That's what you're asking. There's some specificity as to where some of your client's materials landed, right? That is right, that there are some subset of properties tied to some defendants. In the main, the defendants aren't linked to particular properties. How much do they need? How much do they need? How much do they need? I mean, you're saying they have identified some specific materials from one or another specific defendant and it was lodged or disposed of or reused at certain specific locations. Well, in terms of the group pleading problem, if they've alleged enough as to those particular properties for the defendants, then they should dismiss the other defendants. Then this complaint should be much, much narrower. I agree that they've done a little bit of identifying and maybe that's enough on the group pleading ground for that particular narrow subset of properties. But then we have a lot of properties with no specific tie at all. Isn't it enough to say that in the relevant time period there were only three possible sources and the defendants, named defendants, are the three possible sources? Doesn't that create a high enough probability that you at least get to discovery so you can parse out what got shipped where? I would look at it as imagining, instead of having this complaint all lumped together with all the properties and all the defendants, imagine that there was one property and they named one company as the defendant. It wouldn't be proper for an allegation to say, well, the material at issue here is from this defendant or maybe two or three other people and we don't know. For purposes, it doesn't change that analysis if the other defendants are also named in the complaint. But if you've got a bunch of plaintiffs and you're alleging that each of the defendants disposed of this material during that period in and around the area, why do you need to tie each defendant to each plaintiff at the pleading stage? Because the statute requires a showing that a defendant contributed to the disposal of the material and that requires some connection between the defendant and the property. And what they've done here is lumped the defendants together all in one without specifying which property was tied for the most part. What if you had a case involving, oh, I don't know, three members of the mafia, known members of the mafia, absolutely well-alleged. They're all in cahoots and the three of them collectively abduct a store owner who's not paying protection money and you have all kinds of allegations. They take them to the back room, a gunshot is heard, and then the three walk out and the person is dead. Could the estate not sue all three of the members and say and allege that all of them were responsible for the murder even though you don't know who was back there or not? Maybe you don't know. Maybe you don't know who alleged. Maybe three walk out. I'll change my back. Three walk out of the room. Two of them say, well, I don't know. Clearly only one of us did it. Yes, Your Honor. I think you actually heard a similar case involving a shooting recently on this panel. It happens. But I would say there is that a conspiracy is a totally different claim. If they had alleged a conspiracy like a mafia to dispose of this material, then that would give the allegations, if they were plausibly alleged, factual allegations. Good point. Take out of my hypothetical. A person, three people in a room, or a gunshot is heard in a room. Three people walk out. A body is found inside. That's all we've got. You couldn't sue all three people and say, well, we've got to sort out who was doing the shooting? It's another interesting hypothetical. I'd take the answer if they said the defendants generally all shot this person when it was clear the evidence was, when it was clear only one person shot them, no allegations of conspiracy. But that wouldn't be enough that you would need some plausible allegation that a particular defendant did the action against that particular plaintiff. And I see my time is up, Your Honor. I just wanted to correct one thing in the record, which is the Oak Ridge report that was referred to, the only document that's mentioned by name in the complaint says nothing about the materials being discarded, like thrown away like garbage. If it says anything, it says that the materials were generally used as aggregate fill and substitute for things like asphalt and driveways. And so we'd ask that you affirm the position of the district court. Thank you very much. And why don't we hear from Attorney Horn. You have two minutes for rebuttal. Thank you, Your Honor. Thank you, Judge. The question was posed, how much do we need? What you need are factual allegations from which a reasonable person could plausibly infer that the defendants did the things that we say they did. And we have alleged with specificity by reference to the Oak Ridge report, among other things, that these defendants, through their manufacturing processes, through their industrial processes, generated a waste material. Great slag is a waste material. And this is slag that was not put back into the furnace and used again. This is slag that was taken and used as construction material on other property. And maybe that would be just fine. And in fact, Occidental has indicated that that was its custom and practice. What allegations do you have to flesh out and render plausible the idea that this material is, well, substantially and imminently endangers human health or the environment? Judge, I would point you specifically to paragraph 44 of our amended complaint. We do say on a number of occasions that there are elevated levels of radiation. But you don't say what those levels are. We don't know exactly what those levels are. But we have conducted... How do you know that they have... I mean, there's ambient radiation in this room. Sure there is, Judge. I'm sorry, Your Honor. No, go ahead. So how do we... What do you imagine that indicates that it substantially and imminently endangers human health? I mean, some of the stuff has been there for 80 years. Judge, an important point on that score. Whether it's been there 80 years is immaterial to whether it poses a risk today. Oh, yeah. You understand? But then you need some allegation to indicate why it always was or has now become substantially and imminently an endangerment. So the U.S. EPA at the Niagara Falls Boulevard properties back in 2016 went further than it may and said specifically with respect to the materials on that property, those properties on the Niagara Falls Boulevard, that they do pose an immediate risk to human health and the environment. And absent some action on the part of somebody, and it said specifically that the state and the local government was unable to do this, absent action by somebody, that risk to human health and the environment was going to be deleterious. It was going to be problematic. Immediate action was required. That was in September of 2016, Judge. The next year, they stopped. They stopped entirely such that the citizen suit gap filler provision of RCRA stepped in through these plaintiffs to fill that gap. So can I just make sure? I think I'm understanding what you're alleging in paragraph 44 is that you have to allege facts that these solid wastes may present an imminent and substantial endangerment, and you are quoting from the U.S. EPA, and you're saying that the fact that you're alleging is that the government has come in to these certain properties, made that very specific finding, and you're effectively piggybacking on a government's investigation or determination, and that is the factual allegation that you're using to allege imminent harm. Well, Judge, how do you know that there is imminent harm? Somebody has to have started that ball rolling. In this particular case, the EPA has. Well, that's what I'm saying. You didn't go in there with a Geiger counter. You're saying you're piggybacking on an agency's determination. Well, what we've also done then, speaking of a Geiger counter, is gone on our own. I think you did speak of a Geiger counter. No, no, no. I said maybe you did go around with a Geiger counter. We did. We did. And in fact, we alleged that much at 43. We walked around with a Geiger counter. We detected elevated levels of gamma radiation, similar to what the EPA did that we described in paragraph 4. The EPA's action memo is part of the record in this case. It's one of the many documents on which the plaintiffs relied in drafting this complaint. And I would also point out, Judge, that in paragraph 68 of our complaint, we refer to the fact that under New York law, and this is unaddressed by the defendants in their papers at all, under New York law, the material at issue is so dangerous that it requires, if a single inch of it is disturbed, say to build a vegetable garden or to put an addition on a house, it must be disposed of at a permitted facility of which there are none in New York. There is not a single licensed facility capable of taking this radioactive material. Thus, at great cost to whomever is having to bear that cost, it must be sent out of state. This is an indication that people far smarter than I have determined that this poses a substantial and imminent threat to human health and the environment. Thank you very much. Thank you to both counts on both sides. Again, very helpful arguments and we appreciate your coming down to argue today.  Thank you, Your Honor.